FLORIDA SOUTHERN RAILWAY COMPANY, APPELLANT, VS. JACOB KATZ, APPELLEE.

1. When a passenger goes on the train of a railroad company and pays his fare to be transported to some locality on such company's road, and the conductor before the journey is completed tells the passenger that the train will not go to the station to which such passenger has paid to be carried, and that he can either get off at the station where the train is then stopping or go to some other point, whereupon the passenger leaves the train, he has a right of action against the company for damages.

2. But, if after the passenger leaves the train, the conductor tenders him back the fare for the incompleted part of his journey, and he voluntarily receives it, he thereby waives his right of action.

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion.

*Calhoun, Davis & Gillis* for Appellant.

*Ashby, Scott & Thrasher* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

The plaintiff went on the passenger car of defendant at Micanopy to be carried on the same day to Ocala and back to Micanopy. The plaintiff was traveling on what is known as a thousand mile ticket, containing a coupon for each mile. On the return from Ocala plaintiff handed to the conductor his ticket book and the conductor detached and took therefrom the number of coupons necessary to pay plaintiff's fare to Micanopy, stating at the time that he did not know whether the train would go to Micanopy or not. That he would not know until the train reached Lockbie or Evinston, which were telegraph stations, what his orders would be. After passing Evinston the conductor informed plaintiff that the train would not go to Micanopy and that plaintiff would either have to get off at Micanopy Junction or go on to Gainesville. A spur track runs from the main line at a point called Micanopy Junction to Micanopy, a distance of three miles. The conductor stopped the train at the junction and repeated what he had said to the plaintiff that he would have to get off there or go on to Gainesville. Plaintiff insisted that he should be carried to Micanopy, and on the conductor's refusal got off the train at the Junction.

The conductor then offered him back a part of his mile-

age coupons which he had detached, which plaintiff says he at first refused, " but then did take them back under pro-test." The coupons returned to plaintiff were ten in num-ber, of which three were punched and seven not punched. The plaintiff walked to Micanopy, a distance of about three miles, by which he was fatigued and made sick. Plaintiff in his evidence said that he meant by taking the mileage coupons back " under protest " that " he first re-fused to take them and then took them." The plaintiff claims damages for not carrying him to Micanopy.

The Judge charged the jury that " if plaintiff received back the fare under protest and without intention to give-up his right to be carried back to Micanopy then he did not give up his rights."

The question presented in this case is, did the plaintiff by receiving back his fare waive his right to an action for damages? Plaintiff says that he received the fare back un-der protest. He does not say that any compulsion was used, or any pressure brought to bear on him, to make him take the fare back. If there had been he would not have been bound by the act. We cannot regard it in any other light, in the absence of compulsion or duress, than his voluntary acceptance of it.

From the allegations in the declaration and the proof the plaintiff was entitled to recover damages.

It is not necessary to determine here whether his right of action was founded on contract or tort; ordinarily any act which would amount to a waiver of a right of action on one would be equally applicable to the other. Was the act of the plaintiff in receiving back his fare from the conductor a waiver of his right of action ?

When a passenger pays the fare demanded to be trans-ported from one locality to another on a railroad train it is the duty of the persons in charge thereof to carry such

passenger to the place to which he has paid to be carried. The law imposes this obligation alone on the ground that the railroad company had received a consideration therefor.

If, before the railroad company have completed the carriage as contemplated, the conductor tenders to the passenger the amount of his fare for the incompleted portion of the journey, stating to him that the train was not going to the place to which the passenger had paid to be carried, and he voluntarily receives it, there is no obligation on the company to carry him further.

The passenger must be considered as having waived his right to be carried over that part of the route for which the company have no consideration.

So if, after the refusal of the railroad company to transport the passenger to his point of destination, the passenger gets off the train and the conductor tenders him his fare for the incompleted part of the journey, and he voluntarily receives it, he must be considered as waiving his right to damages for the non-performance of the undertaking.

The law, as we have said, imposes the obligation on the railroad company to transport him solely on the ground that he has paid them to do it.

If after a failure of the company to carry him he receives back the consideration paid, it leaves the company without the foundation on which alone its obligation could rest, and deprives him of the right of suing on a promise from which by his own act he has removed the only support.

Judgment reversed.